T.C. Memo. 2018-210

UNITED STATES TAX COURT

DEBRA WALKER BRESCAN OBEIRNE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4313-17L.                    Filed December 20, 2018.

Debra Walker Brescan Obeirne, pro se.

<u>Rachel L. Gregory</u> and <u>Bartholomew Cirenza</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  In this collection due process (CDP) case, petitioner

seeks review pursuant to sections 6320(c)and 6330(d)[1] of the determination by the

---

[1]All statutory references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

**[\*2]** Internal Revenue Service (IRS or respondent) to uphold the filing of a notice of Federal tax lien (NFTL).  The IRS initiated the collection action with respect to petitioner's Federal income tax liabilities for 2003-2007 and 2009.  Respondent has moved for summary judgment under Rule 121, contending that there are no disputed issues of material fact and that his determination to sustain the proposed collection action was proper as a matter of law.  We agree and accordingly will grant the motion.

Background

The following facts are based on the parties' pleadings and motion papers, including the declaration and exhibits accompanying respondent's motion.  See Rule 121(b).  Petitioner resided in Virginia when she petitioned this Court.

Petitioner did not file a timely Federal income tax return for any of the six years in question.  For each year, the IRS appears to have prepared a substitute for return under section 6020(b), using her taxpayer identification number (TIN) and determining her tax liability on the basis of single filing status.  Petitioner and her husband (now deceased) later filed a delinquent return for each year, in each case electing joint filing status.

The delinquent joint returns listed petitioner's husband as the primary filer and petitioner as the spouse.  The IRS accordingly posted the returns to a separate

[*3] account under her husband's TIN. As each joint return was filed, the IRS transferred the items from petitioner's individual account to her husband's account, aggregated and reconciled those items, and abated the tax liabilities originally appearing on her individual account. All tax liabilities originally posted to her individual account have been abated.[2]

This case concerns the IRS' efforts to collect from petitioner liabilities appearing in the joint account under her husband's TIN, for which she and he were both liable. The assessments made for 2005-2009 were based on liabilities self-reported on the couple's delinquent joint returns. The assessments for 2003 and 2004 were made pursuant to stipulated decisions filed in deficiency cases brought in this Court by petitioner's husband. See O'Beirne v. Commissioner, T.C. Dkt. No. 17402-06 (Aug. 23, 2007); O'Beirne v. Commissioner, T.C. Dkt. No. 25840-06 (Aug. 23, 2007). The parties thereby agreed to deficiencies of $38,566 and $35,521 (plus additions to tax) for 2003 and 2004, respectively. The IRS made

_____

[2]In 2012 and 2015 the IRS filed NFTLs against petitioner in her individual capacity in an effort to collect certain tax liabilities then appearing on her individual account, and she requested CDP hearings. The settlement officer declined to sustain the 2012 NFTL because the liabilities on petitioner's individual account for the years in question (2006 and 2007) had been abated. The settlement officer sustained the 2015 NFTL but noted that the lien would be released because petitioner's individual account had no balances due for any of the years in question (2009-2012).

**[*4]** total assessments for these two years, including additions to tax and applicable interest, of $43,389 and $48,068, respectively.

Petitioner and her husband made various payments (and the IRS applied various credits) toward these joint-account liabilities. As of August 2016 the joint account showed relatively small balances due for 2003-2006 and somewhat larger balances due for 2007 and 2009. On September 6, 2016, in an effort to collect these liabilities, the IRS issued to petitioner and her husband (who had died the previous January) a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing. Petitioner timely requested a CDP hearing, checking the boxes indicating her interest in an installment agreement, an offer-in-compromise, and withdrawal of the NFTL. She stated that some of the liabilities shown on the NFTL "do not exist * * * or are incorrect" and asserted that "[n]otice was not given before the Liens were filed."

A settlement officer (SO) from the IRS Appeals Office sent petitioner a letter scheduling a CDP hearing. This letter informed her that the SO could not consider a collection alternative unless she submitted appropriate documentation, including Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals; Form 656, Offer in Compromise; and supporting fi-

**[*5]** nancial information. Petitioner did not provide any of this documentation to the SO before or at the hearing.

The CDP hearing was held on January 11, 2017. Petitioner contended that the tax liabilities shown on the NFTL were not correct. The SO agreed with her on that point: Because of payments and credits during the intervening four months, the balances due on the joint account for 2003-2006 had been eliminated, as had all balances due on petitioner's individual account. However, the joint account continued to show balances due for 2007, 2009, and later years. At the time of the CDP hearing, those amounts appear to have been $13,773 for 2007 and $6,109 for 2009.

The SO concluded that petitioner's unpaid liabilities for 2007 and 2009 justified the NFTL filing to protect the Government's interest, particularly in light of petitioner's past noncompliance with her tax obligations. He determined that she had received proper notice of the NFTL filing and had produced no evidence to show that she satisfied the standards for lien withdrawal under section 6323(j).

Petitioner's representative contended that the IRS had misapplied certain levy proceeds collected in earlier years. The SO checked petitioner's account transcripts and verified that all levy proceeds previously applied to her individual account had been transferred and properly posted to the joint account. Petitioner's

[*6] representative also drew the SO's attention to the outcomes of prior CDP hearings involving petitioner's individual account. See supra note 2. The SO explained that these earlier proceedings were irrelevant: All liabilities in petitioner's individual account had been abated and reconciled with the liabilities in the joint account, which were (and are) the sole subject of the current CDP case.

At the hearing petitioner's representative made an oral offer to settle, for $20,000, petitioner's outstanding joint-account liabilities for 2007 through 2014, which the SO believed to total about $36,700. After conferring with his supervisor, the SO determined that he lacked authority to accept this informal offer, particularly in the absence of any supporting financial information. The SO reviewed the administrative file, verified that the tax liabilities at issue had been properly assessed, and verified that all other requirements of law and administrative procedure had been satisfied. On January 25, 2017, the SO issued a notice of determination sustaining the NFTL filing. Petitioner timely petitioned this Court for redetermination.

## Discussion

### A.    Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90

**[\*7]** T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Sundstrand Corp., 98 T.C. at 520. However, the nonmoving party may not rest upon the mere allegations or denials of her pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see Sundstrand Corp., 98 T.C. at 520. We conclude that the questions before us may appropriately be adjudicated summarily.

B.  Standard of Review

Neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. But our case law tells us what standard to adopt. Where the validity of the taxpayer's underlying tax liability is properly at issue, we review the IRS' determination de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Where the taxpayer's underlying liability is not before us, we review the IRS decision for abuse of discretion only. See id. at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or

[*8] law.  Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

A taxpayer may dispute her underlying tax liability in a CDP case only if she properly raised that issue at the CDP hearing.  Giamelli v. Commissioner, 129 T.C. 107, 113 (2007); sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs. That standard is met only if the taxpayer, after being given a reasonable opportunity to do so, presents evidence addressing the merits of her underlying liability challenge.  See Delgado v. Commissioner, T.C. Memo. 2011-240, 102 T.C.M. (CCH) 377, 379; Giamelli, 129 T.C. at 112-116; sec. 301.6320-1(f)(2), Q&A-F3, Proced. & Admin. Regs.

The SO determined that petitioner has no outstanding tax liability for 2003, 2004, 2005, or 2006.  Her underlying tax liabilities for 2007 and 2009 are based on the tax reported on the joint returns she filed with her husband for those years. Because she did not have a prior opportunity to dispute these liabilities, she was entitled to dispute them at the CDP hearing.  See sec. 6330(c)(2)(B); Montgomery v. Commissioner, 122 T.C. 1, 8-9 (2004).  But she submitted no evidence of any sort to the SO on this subject.  Nor did she submit amended returns showing what she believed her correct tax liabilities for 2007 and 2009 to be.  Because petitioner failed to raise a proper challenge to her 2007 and 2009 tax liabilities at the CDP

**[*9]** hearing, she is precluded from challenging those liabilities in this Court. See

Giamelli, 129 T.C. at 113 (2007); sec. 301.6320-1(f)(2), Q&A-F3, Proced. &

Admin. Regs. ("An issue is not properly raised * * * if consideration is requested

but the taxpayer fails to present to Appeals any evidence with respect to that issue

after being given a reasonable opportunity to present such evidence."). We there-

fore review the SO's action for abuse of discretion only.

C.     Analysis

In ascertaining whether the SO abused his discretion, we review the record

to determine whether he:  (1) properly verified that the requirements of applicable

law or administrative procedure have been met; (2) considered any relevant issues

petitioner raised; and (3) determined whether "any proposed collection action

balances the need for the efficient collection of taxes with the legitimate concern

of * * * [petitioner] that any collection action be no more intrusive than neces-

sary." See sec. 6330(c)(3).  Our review of the record confirms that the SO proper-

ly discharged all of these duties.

Petitioner advanced three principal contentions during the CDP hearing and

in this Court.  First, she asserts that the SO "failed to properly research [the] Tax

Court settlements" for 2003 and 2004, with the supposed result that "levies of

[her] wages were incorrectly applied to years that had no tax liabilities."  In ad-

**[\*10]** vancing this contention, petitioner appears to contend that the IRS collected too much tax for 2003 and 2004.

Petitioner's argument lacks merit. The SO carefully reviewed petitioner's account transcripts, individual and joint, and explained to her representative that all payments, credits, and other amounts had been properly applied against the tax liabilities as determined by this Court. These transcripts show that the IRS applied total payments--including levy proceeds and overpayment credits from other years--of $43,389 for 2003 and $48,068 for 2004. Those payments precisely match the assessments for each year. See supra pp. 3-4.[3]

Second, petitioner contends that the SO failed to consider the outcomes of earlier CDP hearings involving her individual account, which determined that she had no outstanding tax liabilities in her individual account for (among other years) 2007 and 2009.[4] But as the SO explained to petitioner's representative, these

---

[3]In her petition and her response to the summary judgment motion, petitioner advanced various arguments concerning tax years 1999-2002 and 2010-2014. Because the notice of determination addressed collection action with respect to tax years 2003-2007 and 2009 only, those other years are not before us.

[4] See supra note 2. Generally, a taxpayer is entitled to only one CDP hearing for a given tax period unless (for example) the amount involved has changed due to a subsequent assessment. See sec. 6320(b)(2); sec. 301.6320-1(d)(2), Q&A-D1, Proced. & Admin. Regs. Respondent does not dispute that petitioner was entitled to a CDP hearing for the joint tax liabilities at issue in this case.

[*11] earlier proceedings are irrelevant:  All liabilities in petitioner's individual account have been abated and reconciled with the liabilities in the joint account, which are the sole subject of the current CDP case.  Petitioner does not dispute that she is liable for the tax liabilities shown on the returns that she jointly filed with her husband for 2007 and 2009.  See sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000).[5]

Finally, petitioner contends that the SO failed to consider the doctrine of equitable recoupment.  See sec. 6214(b); Emery Celli Cuti Brinckerhoff & Abady, P.C. v. Commissioner, T.C. Memo. 2018-55, at *23-*24 (finding an abuse of discretion and applying equitable recoupment to taxpayer's benefit in a CDP case). Petitioner asserts the SO should have applied this doctrine to allow her to recoup the amounts of time-barred overpayments.  But she does not identify the overpayments in question or the years for which they allegedly occurred.

As a general rule, a party claiming the benefit of equitable recoupment must establish that this doctrine applies.  Menard, Inc. v. Commissioner, 130 T.C. 54, 62 (2008), rev'd on another issue, 560 F.3d 620 (7th Cir. 2009).  The party must establish (among other things) that "the same 'transaction, item or taxable event'

_____

[5]As far as the record reveals, petitioner has not filed with the IRS a request for relief from joint and several liability (so-called innocent spouse relief) under section 6015.

**[\*12]** \* \* \* [is] subject to two taxes," which are "inconsistent in that the Tax Code authorizes only a single tax." Estate of Branson v. Commissioner, 264 F.3d 904, 909 (9th Cir. 2001) (quoting United States v. Dalm, 494 U.S. 596, 605 n.5 (1990)), aff'g 113 T.C. 6, 19 (1999).

Petitioner has supplied no reason to believe that the doctrine of equitable recoupment has any bearing on this case. She has not identified a relevant over-payment that is time barred, and she has not specified any event or transaction that has been subjected to tax on inconsistent theories. The SO did not abuse his discretion in declining to pursue this theory. Finding no abuse of discretion in this or any other respect, we will grant respondent's motion for summary judgment and sustain the collection action with respect to petitioner's joint-account liabilities for 2007 and 2009.

To reflect the foregoing,

Decision will be entered for respondent.